IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEM FINANCIAL SERVICES, LLC d/b/a          )
NORTHWESTERN MUTUAL-                        )
PITTSBURGH, MCKENNA DISTRICT                )
OFFICE, LLC and RYAN MCKENNA               )     Civil Action No.   2:19-cv-490
                                           )
             Plaintiffs,                   )     *ELECTRONICALLY FILED*
                                           )
      v.                                   )
                                           )
CHRISTOPHER PFANSTIEL, OLIVIA              )
STOPKO, ANDREW MORGAN, NICHOLAS            )
POCHIBA, KAYLA CONTI, EMMA GRAY,           )
MARK E. VUKEVICH, XXI CENTURY              )
FINANCIAL – PITTSBURGH DISTRICT            )
OFFICE,                                    )
                                           )
             Defendants.                   )

## VERIFIED COMPLAINT

KEM Financial Services, LLC d/b/a Northwestern Mutual – Pittsburgh ("KEM"),

McKenna District Office, LLC ("MDO") and Ryan McKenna ("McKenna") (collectively,

"NWMP"), by and through their undersigned counsel, file this Verified Complaint against their

former financial representatives, Christopher Pfanstiel ("Pfanstiel"), Olivia Stopko ("Stopko"),

Andrew Morgan ("Morgan"), Emma Gray ("Gray"), Nicholas Pochiba ("Pochiba") and Kayla

Conti ("Conti")[1] who, in violation of their contractual obligations to NWMP, are now working in

substantially similar roles for and soliciting NWMP's customers on behalf of XXI Century

Financial and its Soliciting Agent Mark Vukevich ("Vukevich") (Vukevich and XXI are

collectively referred to as "XXI Century"), NWMP's direct competitor.

In their roles with NWMP, the Individual Defendants were responsible for providing

insurance and/or investment products or services to more than 2,000 of NWMP's clients,

---

[1] Pfanstiel, Stopko, Morgan, Gray, Pochiba and Conti are collectively referred to as the "Individual Defendants".

representing more than $32,000,000 in total assets under management and more than $7,000,000 in insurance premiums, all of whom originated from NWMP.  These roles provided the Individual Defendants with access to NWMP's most valuable customer relationships and its confidential and proprietary information, including information regarding its clients, prospective clients, key contacts, business and marketing plans and strategies, profit margins, and pricing, among other things.

Now, with NWMP's confidential, proprietary information, the Defendants are actively soliciting NWMP's clients and employees in violation of the Individual Defendants' contractual obligations to NWMP and contrary to the common law obligations to compete fairly and respect the contractual relations of third parties.

A.    **Introduction**

1.    This action is brought (i) to enjoin and restrain Defendants from solicitation of Plaintiffs' customers' replacement insurance policies, annuities issued by and investment accounts held with The Northwestern Mutual Life Insurance Company ("NM") and its affiliates; (ii) to order Defendants to return all policyholder, annuitant, and customer data and files to Plaintiffs; (iii) to order the Individual Defendants to provide a sworn Certification that they have returned all such data and files to Plaintiffs; and (v) for an award to Plaintiffs of compensatory damages, attorneys' fees and other appropriate relief against Defendants.

2.    Plaintiffs are independent contractor representatives of NM who themselves and through other independent contractors (who are contracted to them) sell insurance, annuities and investment products such as variable annuities and variable life insurance with offices in Pittsburgh, Pennsylvania.

3.    Plaintiffs' business is based on the customer relationships they develop, foster and assign to their financial representatives, like the Individual Defendants.

4.      Plaintiffs contracted with the Individual Defendants as financial representatives in the highly competitive insurance and financial services industry.

5.      In these roles, the Individual Defendants had access to NWMP's most valuable client relationships and its confidential and proprietary information and trade secrets, including information regarding its clients, prospective clients, client files, policy holder data, key contacts, business and marketing plans and strategies, profit margins, insurance products, fees and pricing (hereinafter collectively referred to as the "Confidential Information and Trade Secrets").

6.      In violation of their contractual obligations to NWMP and after requesting voluminous client lists and downloading thousands of documents from NWMP's password-protected systems and databases, each of the Individual Defendants conspired to unfairly compete with NWMP and solicited the others to terminate their relationships with NWMP on March 25, 2019, using identical resignation letters.

7.      After the Individual Defendants resigned on March 22, 2019, effective March 25, 2019, the Individual Defendants (a) went to work for XXI Century, one of NWMP's primary competitors in the financial services and insurance industry; and (b) began soliciting NWMP's customers in violation of their non-solicitation obligations to NWMP.

8.      If left unstopped, the Individual Defendants will continue to use NWMP's Confidential Information and Trade Secrets and its considerable goodwill for the benefit of themselves and XXI Century, thereby enabling XXI Century to unfairly compete with NWMP.

9.      NWMP has suffered and will continue to suffer immediate and irreparable harm if Defendants' unlawful conduct is not immediately enjoined.

B.    **Parties**

10.    KEM is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 3550 US Steel Tower, Pittsburgh, PA 15219.

11.    MDO is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1928 Cochran Road, Pittsburgh, PA 15220.

12.    McKenna is an adult individual who is a citizen of Allegheny County, Pennsylvania, residing at 658 Osage Rd, Pittsburgh, PA 15243.

13.    Pfanstiel is an adult individual who, upon information and belief, is a citizen of Allegheny County, Pennsylvania, residing at 35 Highland Rd, Apt. 5208, Bethel Park, PA 15102.

14.    Stopko is an adult individual, who upon information and belief, is a citizen of Washington County, Pennsylvania, with a last known address of P.O. Box 228, Millsboro, PA 15348.

15.    Morgan is an adult individual, who upon information and belief, is a citizen of Allegheny County, Pennsylvania, residing at 1000 Wingate Dr., Apt 401, Pittsburgh, PA 15205.

16.    Pochiba is an adult individual, who upon information and belief, is a citizen of Allegheny County, Pennsylvania, residing at 79 Schley Ave., Pittsburgh, PA 15205.

17.    Conti is an adult individual, who upon information and belief, is a citizen of Lawrence County, Pennsylvania, residing at 931 Rose Ave, New Castle, PA 16101.

18.    Gray is an adult individual, who upon information and belief, is a citizen of Washington County, Pennsylvania, residing at 109 Cornerstone Court, Venetia, PA 15367.

19.    Vukevich is an adult individual, who upon information and belief, is a citizen of Allegheny County, Pennsylvania, residing at 31 Longuevue Dr., Pittsburgh PA 15228.

20.     Upon information and belief, Vukevich is a soliciting agent for Penn Mutual Insurance ("PMI") and a registered representative for Horner, Townsend and Kent, Inc. ("HTK"), the wholly owned broker dealer of PMI.

21.     Upon information and belief, XXI Century Financial – Pittsburgh District Office is the Pittsburgh Office of PMI with an office at 381 Mansfield Avenue, Suite 131, Pittsburgh, PA 15220.

22.     Upon information and belief, Vukevich does business under the name XXI Century Financial – Pittsburgh District Office.

23.     While working on behalf of NWMP, the Individual Defendants had access to NWMP's Confidential Information and Trade Secrets which they regularly used to (a) sell insurance, insurance-related products and services and other financial services and (b) provide financial advice and planning strategies to more than 800 of NWMP's investment clients.

24.     Upon information and belief, the Individual Defendants are all now engaged by and performing nearly identical work on behalf of XXI Century in the highly competitive insurance and financial services industry.

**C.    <u>Jurisdiction and Venue</u>**

25.     This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the case arises, in part, under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*.

26.     This Court has supplemental jurisdiction over the state law claims in this action under 28 U.S.C. § 1367 because such claims are so closely related to the Defend Trade Secrets Act claim that they are part of the same case and controversy.

27.     This Court has personal jurisdiction over the Individual Defendants because they have the required minimum contacts with this forum to establish personal jurisdiction.  The Individual Defendants (a) reside in, are citizens of, and are domiciled in or around Pittsburgh,

Pennsylvania; (b) were engaged to perform services for NWMP in Pittsburgh, Pennsylvania and the surrounding areas; (c) are engaged by XXI Century in Pittsburgh, Pennsylvania; (d) improperly solicited NWMP's clients and prospective clients in Pittsburgh, Pennsylvania and the surrounding areas; (e) unlawfully conspired to breach their contractual obligations to NWMP in Pittsburgh, Pennsylvania and (f) have used and are using NWMP's Confidential Information and Trade Secrets on behalf of XXI Century in Pittsburgh, Pennsylvania.

28.     This Court has personal jurisdiction over XXI Century because XXI Century has the required minimum contacts with this forum to establish personal jurisdiction.  XXI Century (a) is registered to do business in Pennsylvania; (b) engages financial representatives (including the Individual Defendants) in Pennsylvania; (c) has at least one office location within the Commonwealth of Pennsylvania; (d) misappropriated NWMP's Confidential Information and Trade Secrets in Pennsylvania; (e) tortiously interfered with NWMP's contractual obligations with the Individual Defendants in Pennsylvania and (f) tortiously interfered with NWMP's business relationships with its clients in Pennsylvania.

29.     Based on Defendants' contacts as described in Paragraphs 26 and 27, it was wholly foreseeable that they would be haled into court in the United States District Court for the Western District of Pennsylvania.

30.     Venue is proper in the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1391 because: (a) the Individual Defendants reside in, are citizens of and are domiciled in Western Pennsylvania; (b) this Court has personal jurisdiction over all parties; and (c) a substantial portion of the events giving rise to the claims asserted in this action occurred in this judicial district.

**D.    NWMP's Business**

31.    Based in Milwaukee, NM is a leading provider of insurance, annuities and investment products such as variable annuities and variable life insurance.

32.    NM contracts with independent contractor General Agents across the country, who, in turn, contract with independent contractors to function as agents and solicit applications for NM insurance and annuities.

33.    KEM is NM's General Agent located in Western Pennsylvania.

34.    McKenna is a licensed financial representative who is contracted with KEM to solicit applications for insurance and annuities; aid in the maintenance of existing insurance policies and annuities; provide advisory services; and service existing and new policyholders, annuitants, and beneficiaries.

35.    To do so, McKenna contracted financial representatives, including the Individual Defendants, to solicit applications for insurance and annuities; aid in the maintenance of existing insurance policies and annuities; provide advisory services; and service existing and new policyholders, annuitants, and beneficiaries.

36.    The insurance and financial services industry is a highly competitive marketplace with many firms vying for the same clients.

37.    Plaintiffs and XXI Century, both of which provide insurance and annuities, provide advisory services and service existing and new policy and account holders, are direct competitors.

38.    Plaintiffs provide customized investment strategies and plans for its clients based on the financial needs and goals of the client.

39.    Because this requires Plaintiffs to have an intimate knowledge of their clients' unique circumstances, objectives, risk tolerance and future aspirations, Plaintiffs invest significant resources in developing and fostering these relationships through its representatives.

40.    Plaintiffs, like their competitors, focus much of their business development efforts through a dedicated group of financial representatives, who are assigned to and cultivate specified NWMP accounts and regions.  Plaintiffs' financial representatives, like others in the industry, grow NWMP's portfolio in a variety of ways, but most importantly, through relationship building with NWMP's clients and prospective clients. These relationships, built over time, are often the most important factor in selecting a financial representative, as clients come to rely upon the advisor as their point of contact and the "face" of the company.

41.    Plaintiffs rely on their financial representatives to be their contact with NWMP clients for their insurance and investment needs.

42.    Financial representatives gain vast amounts of knowledge about NWMP's clients, including their insurance needs, financial goals, risk tolerance, portfolio and investment strategies.  Such information could be easily exploited by a competitor if the competitor was permitted to gain access to such information by engaging one, not to mention a group, of Plaintiffs' financial representatives and using them to solicit NWMP's clients and prospective clients.

43.    As such, Plaintiffs place a great deal of trust in their financial representatives by entrusting them with a vital asset – NWMP's relationships with its clients.

44.    Plaintiffs also entrust their financial representatives with Confidential Information and Trade Secrets, including client files and other information regarding clients, potential clients,

pricing, products, services, investment strategies, profit margins, sales, sales volumes, unique client needs and goals, etc.

45.    Plaintiffs expend a great deal of money through the commissions and other compensation they pay to the financial representatives to build strong client relationships between NWMP and its clients.

**E.    Individual Defendants' Engagement with NWMP**

46.    NWMP contracted Pfanstiel, Stopko, Morgan, and Pochiba as independent financial representatives.

47.    Prior to joining NWMP, Pfanstiel, Stopko, Morgan and Pochiba had no insurance or investment experience and, in fact, had not yet finished college.

48.    Pochiba also had no insurance or investment experience prior to joining NWMP; rather, he was in a completely different profession and NWMP gave him the opportunity for a career change.

49.    Gray and Conti were employed by NWMP as associate agents.

50.    Like the other Individual Defendants, Gray and Conti had no insurance or investment experience prior to joining NWMP.

51.    In their work for NWMP, the Individual Defendants gained valuable knowledge and experience in the insurance and financial services industry through the mentoring, training and support provided by NWMP.

52.    As financial representatives and associate agents, the Individual Defendants serviced more than 2,000 of NWMP's valuable clients so that they could further develop these relationships on behalf of NWMP and expand the scope of insurance and investment products and services NWMP provided to those clients.

53.    NWMP entrusted Individual Defendants with more than 800 of its valuable Investment Clients, totaling more than $32,000,000 in assets under management and more than 1,500 of its Insurance Clients, accounting for more than $7,000,000 in insurance premiums.

54.    As financial representatives and associate agents, the Individual Defendants were entrusted with NWMP's Confidential Information and Trade Secrets.

55.    The Individual Defendants were well-compensated for their roles for NWMP, with Pfanstiel, Stopko, Morgan, and Pochiba receiving commissions on the insurance policies and investment accounts they managed and Gray and Conti receiving annual salaries in excess of $40,000 per year.

**F.    Individual Defendants' Contractual Obligations**

56.    To protect its valuable client relationships and Confidential Information and Trade Secrets and as a condition of one's contracting as a soliciting agent and financial representative for NWMP, NWMP requires its financial representatives to execute and agree to the terms of a Full-Time Special or Soliciting Agent's Contract ("Agent's Contract"), which includes obligations that extend after the termination of the contract.  *See* the attached Agent's Contracts for Pfanstiel, Stopko, Morgan and Pochiba attached hereto as Exhibits 1-4.

57.    To protect its valuable client relationships and Confidential Information and Trade Secrets and as a condition of employment with NWMP, NWMP requires its associate agents to execute and agree to the terms of an Associate Agent Contract, which includes obligations that extend after the termination of employment.  *See* the attached Associate Agent's Contracts for Gray and Conti attached hereto as Exhibits 5-6.

58.    The Agent's Contracts and the Associate Agent Contracts protect "any and all information, data and/or materials regarding or relating to [NW and NWMP], its business and its clients," including without limitation:

(i) Any technical and/or business information relating to the Company's products, research and development, production, costs, information systems, profit or margin information, finances, sales materials, marketing, business processes or procedures and future business plans;

(ii) The identities of, and any information, data and/or materials containing personally identifiable information regarding current, prospective or former applicants, policyowners, insureds, payers, beneficiaries, annuitants, accountholders, and/or any other client of the Company or any of its subsidiaries or affiliates (hereinafter, collectively, "Clients").

[Confidential Information and Trade Secrets] shall not include any information which is in the public domain or becomes known in the industry without breach of this Agreement.

*See* Exhibits 1-6, ¶ 15.

59.     The Individual Defendants further agreed and acknowledged that the Confidential Information and Trade Secrets were "vital, sensitive, confidential and proprietary" to NW and NWMP.  *See* Exhibits 1-6, ¶ 15.

60.     The Individual Defendants further agreed that both during and after the term of their contracts, they would "maintain the confidentiality and security of all such [Confidential Information and Trade Secrets] to prevent the unauthorized disclosure of such [Confidential Information and Trade Secrets]." *See* Exhibits 1-6, ¶ 15.

61.     The Individual Defendants agreed not to "reproduce, alter or tamper with client or business information or materials or any other [Confidential Information and Trade Secrets] other than in furtherance of the activities authorized" by NWMP. See Exhibits 1-6, ¶ 15.

62.     The Individual Defendants agreed to "hold and preserve, in a format prescribed by [NW], all records, including those in electronic or digital form, relating to transactions by, for or with [NW], and all other property of [NW and NWMP] which at any time shall come into [Individual Defendants'] possession or under [the Individual Defendants'] control.  [Individual

Defendants] shall surrender all such records and property to [NW and/or NWMP] upon demand or upon termination of this Agreement." *See* Exhibits 1-6, ¶ 11.

63.    Furthermore, Pfanstiel, Gray and Pochiba were also required to execute Registered Representative Agreements with Northwestern Mutual Investment Services, LLC (referred to herein as the "NMIS Contract" or "NMIS Contracts"), a wholly-owned broker-dealer subsidiary of NM (copies of which are attached as Exhibits 7-9), which contractually obligated them, upon termination, to return any Confidential Information and Trade Secrets in their possession, including all information materials regarding NWMP clients, other than the client's name, address, phone number, and email address.

64.    To protect its Confidential Information and Trade Secrets and important client relationships, NWMP requires its financial representatives and associate agents, including the Individual Defendants, to agree not to solicit NWMP's clients to replace or otherwise surrender their policies or investment accounts for one year following the termination of their relationship with NWMP.  *See* Exhibits 1-4.

65.    Specifically, Pfanstiel, Stopko, Morgan and Pochiba agreed:

> While my Contract is in effect and for a period of one (1) year following its termination, I will not, directly or indirectly, induce or attempt to induce or assist any Client of the Company, its subsidiaries or affiliates as to whom I have received or am receiving compensation or am providing service or have provided service to withdraw, curtail, reduce, cancel, surrender or terminate any insurance, annuities, securities products or any other existing business or commercial relationship with the Company or any of its subsidiaries or affiliates.  I acknowledge and agree that this paragraph does not restrict me from being employed by or engaged in a competing business following the termination of my Contract.

*See* Exhibits 1-4, Non-Solicitation Addendum, ¶ 1.

66.    Similarly, Gray and Conti agreed:

> For a period of one (1) year following the termination of this Agreement, Associate Agent will not, directly or indirectly, induce or attempt to induce or assist any Client of [NW], its subsidiaries or affiliates as to whom Associate Agent has solicited, submitted or processed business or as to whom Associate Agent is providing service or has provided service to withdraw, curtail, reduce, cancel, surrender or terminate any insurance, annuities, securities products or other existing business or commercial relationship with [NW] or any of its subsidiaries or affiliates.  Associate Agent acknowledges and agrees that this paragraph does not restrict Associate Agent from being employed by or engaged in a competing business following the termination of this Agreement.  This Paragraph 10 shall not apply if First Party and Associate Agent terminate their association with Northwestern Mutual simultaneously and continue doing business together in the financial services industry.

See Exhibits 5-6, ¶ 10.

67.    To protect its relationship with and investment in its financial representatives and associate agents, NWMP requires its financial representatives and associate agents, including the Individual Defendants, to agree not to solicit NWMP's financial representatives and other agents for one year following the termination of their relationship with NWMP:

> While my Contract is in effect and for a period of one (1) year following its termination, I will not directly or indirectly, induce or attempt to induce any person under an agent's contract, any type of director's contract, district agent's contract or general agent's contract, or who is a registered representative in the Company's distribution system, to terminate such contract.  Nor will I, while my Contract is in effect and for a period of one (1) year following termination, directly or indirectly, otherwise solicit, induce or attempt to induce any such person to engage with another company in any insurance, securities, commodities, banking and/or financial services trade, business or profession.

*See* Exhibits 1-4, Non-Solicitation Addendum, ¶ 2; *see also* Exhibits 5-6, ¶ 11.

68.    The Individual Defendants further acknowledged and agreed that breach of the obligations contained in Paragraphs 56 to 68 would cause NWMP to "suffer irreparable harm for which the remedy at law may be inadequate."  *See* Exhibits 1-6.

69.     The Individual Defendants further agreed to reimburse NWMP for its attorneys' fees and costs associated with their breach of the obligations contained in Paragraphs 56-63.  *See* Exhibits 1-6.

70.     The Individual Defendants agreed that the Agent's Contract and the Associate Agent's Contract would be governed by Wisconsin law.  *See* Exhibits 1-6.

71.     The Individual Defendants received consideration for signing their respective agreements with NWMP in the form of the compensation associated with their engagement or employment and the continued opportunity to solicit insurance and investment opportunities for NWMP in exchange for compensation.

72.     The Individual Defendants' Agent's Contracts and Associate Agent's Contracts are valid and enforceable.  Moreover, the post-engagement/post-employment restrictions on solicitation of clients contained therein are fair, reasonable and necessary to protect the legitimate business interests of NWMP.  Those business interests are proprietary and establish a competitive advantage in favor of NWMP.

**G.     The Individual Defendants Steal NWMP Confidential Information and Trade Secrets And Resign In Concerted Fashion**

73.     The Individual Defendants resigned on March 25, 2019, each using the identical resignation letter, which read:

> March 22, 2019
>
> To whom it may concern,
>
> I, [Individual Defendant], hereby resign from Northwestern Mutual, effective March 25, 2019.
>
> Thank you,

74.     Upon information and belief, the Individual Defendants had solicited and induced each other to terminate their engagement with NWMP and become engaged by XXI Century in roles that are virtually identical to those that they held for NWMP.

75.     Upon information and belief, in the weeks and months prior to their resignation, the Individual Defendants were intentionally delaying client needs and requests so that they could solicit these clients on behalf of XXI Century.

76.     Prior to their group resignation, the Individual Defendants put in motion their plan to misappropriate NWMP's Confidential Information and Trade Secrets and breach their obligations to NWMP.

77.     Prior to her resignation, Stopko downloaded approximately 300 files to a removable storage device, which upon information and belief, contained NWMP's Confidential Information and Trade Secrets.  Despite several requests by NWMP, Stopko has not returned the removable storage device to NWMP and, upon information and belief, is using such information on behalf of XXI Century in violation of her statutory and contractual obligations to NWMP.

78.     Prior to his resignation, Morgan downloaded approximately 400 files to a removable storage device, which upon information and belief, contained NWMP's Confidential Information and Trade Secrets.  Despite several requests by NWMP, Morgan has not returned the removable storage device to NWMP and, upon information and belief, is using such information on behalf of XXI Century in violation of his statutory and contractual obligations to NWMP.

79.     Eighteen days prior to his resignation, Pfanstiel requested and then received a comprehensive client lists from NWMP, containing confidential client information such as client policy and account information. These client lists are NM and NWMP's Confidential

Information and Trade Secrets. Despite several requests by NM and NWMP, Pfanstiel has not returned these client lists and, upon information and belief, is using such information on behalf of XXI Century in violation of his statutory and contractual obligations to NWMP.

80.    Like Pfanstiel, Pochiba also requested and then received a comprehensive client lists from NWMP, containing confidential client information such as client policy and account information, just days before his resignation. These client lists are NM and NWMP's Confidential Information and Trade Secrets. Despite several requests by NM and NWMP, Pochiba has not returned these client lists and, upon information and belief, is using such information on behalf of XXI Century in violation of his statutory and contractual obligations to NWMP.

81.    The Individual Defendants have also removed and failed to return NWMP client files, which NWMP regards as Confidential Information and Trade Secrets. Despite several requests by NWMP, the Individual Defendants have not returned these client files and, upon information and belief, are using such information on behalf of XXI Century in violation of his statutory and contractual obligations to NWMP.

82.    Upon their resignations, the Individual Defendants, contrary to clear requirements, did not provide the electronic devices they used in their work for NWMP for their hard drives to be erased by running a specific program to accomplish that. Rather, after stealing NWMP Confidential Information and Trade Secrets and receiving a cease and desist correspondence from NWMP threatening litigation, the Individual Defendants claimed to have wiped their computers.

83.    On April 8, 2019, NM advised XXI Century of the Individual Defendants' contractual obligations and misconduct described herein.

16

**H.    Defendants Solicit NWMP's Clients In Violation Of Their Statutory, Common Law And/Or Contractual Obligations to NWMP**

84.    The Individual Defendants are soliciting NWMP's clients in violation of their contractual obligations to NWMP.

85.    NWMP received the following email from a client confirming these solicitations:

**Sent:** Monday, April 15, 2019 1:10 PM
**To:** BRUNA, ANNE /GA077 <anne.bruna@nm.com>
**Subject:** Question

Hi Anne,

I got a call from Chris Pfansteil saying he had left NWM.  He is asking if I want to transfer my account to him as he starts his own business.  I like Chris-he's a good person and has been great to work with.  Can you tell me a bit about the pros and cons of this (in other words, why keeping my account with you all would be best)?  I am looking for a little guidance here.

Thanks,

86.    Another client called NWMP after Pochiba had called him to encourage him to shift his policies from NWMP to XXI Century.  The client indicated that, during the call, Pochiba told him that, after reviewing the XXI Century policies, he had concluded they were "better" than his NWMP policies.

87.    Similarly, when another NWMP financial representative reached out to a prospect to set up an appointment, the prospect informed him that he already has an advisor who used to work with NWMP and that he was meeting with Pfanstiel in the next week or so.

88.    As further evidence of the Individual Defendants' solicitations, NWMP receives weekly notices when an NWMP client is considering replacing NM policies with another policy. NWMP received notices relating to six such clients last week alone and at least 22 notices since the Individual Defendants' resignations.

89.    The Individual Defendants' direct solicitations of Plaintiffs' clients to replace and/or otherwise surrender policies the Individual Defendants previously sold to them violates their non-solicitation obligations to NWMP.

90.     Moreover, because Plaintiffs earn compensation from the sales made by the Individual Defendants, Defendants' actions are causing Plaintiffs to suffer tangible harm in the form of lost compensation each time policies are replaced or surrendered.

91.     Armed with NWMP's Confidential Information and Trade Secrets, including without limitation, information regarding NWMP's clients' financial goals, risk tolerance, and portfolio and investment strategies, the Individual Defendants are now actively soliciting NWMP's clients on behalf of XXI Century, NWMP's direct competitor.

92.     XXI Century also offers insurance, annuities and investment products such as variable annuities and variable life insurance and directly competes with NWMP in Pittsburgh and its surrounding areas.

I.    **NWMP Is Entitled To Preliminary And Injunctive Relief**

93.     NWMP seeks immediate relief in the form of a temporary restraining order against Defendants to require the return of NWMP's Confidential Information and Trade Secrets, stop them from using NWMP's Confidential Information and Trade Secrets on behalf of a competitor and stop them from soliciting NWMP's clients in violation of their contractual obligations to NWMP.

94.     NWMP is likely to succeed on the merits of this case because it has valid and enforceable agreements with the Individual Defendants, it has legitimate business interests to protect, and the Individual Defendants' breaches of their contractual obligations to NWMP are open, blatant and obvious.

95.     NWMP's customer relationships, goodwill, market share, business opportunities, competitive advantage, confidential information, and relations with its remaining employees and independent contractor representatives will be irreparably harmed if a preliminary and permanent injunction is not entered.

96.    NWMP will suffer far greater harm if a preliminary and permanent injunction is not granted than Defendants will suffer if one is granted.  Defendants will suffer no harm – but simply be ordered to honor the promises they made.

97.    Granting a temporary restraining order, including a preliminary injunction, would serve the public interest.

**COUNT I**
**Violation of the Defend Trade Secrets Act**
*NWMP v. All Defendants*

98.    NWMP incorporates by reference Paragraphs 1 through 97 of the Verified Complaint as if fully set forth herein.

99.    NWMP's information regarding its clients and prospective clients, including client files, policy holder data, key contacts, business and marketing plans and strategies, profit margins, insurance products, fees and pricing are the backbone of its business, all of which the Individual Defendants had access to and knowledge of by virtue of their agency or employment relationships with NWMP.  NWMP's Confidential Information and Trade Secrets constitute trade secrets under the Defend Trade Secrets Act.

100.    Disclosure and unauthorized use of this type of information undermines NWMP's competitive position in the highly competitive insurance industry.

101.    NWMP has taken various steps to protect its trade secrets, including (a) using network firewalls, password protection and security credentials to prevent unauthorized access to NWMP's servers; (b) limiting its agents' access to information to that which is necessary to fulfill their job functions; (c) revoking agent authorization when agents terminate their contracts with NWMP; (d) controlling physical access to NWMP's offices and information; (e) monitoring email traffic and resources access; and (e) requiring agents and employees to comply with its

policies and procedures governing confidential information, trade secrets and electronic communications and storage.

102.     Upon information and belief, Individual Defendants have wrongly acquired and/or used certain of NWMP's trade secrets.

103.     Upon information and belief, Individual Defendants continue to possess and/or use such information in connection with their roles and relationships with XXI Century.

104.     Upon information and belief, Defendants knew or should have known that they were acquiring and/or using trade secrets belonging to NWMP.

105.     NWMP did not expressly or impliedly consent to Defendants' acquisition or use of its trade secrets.

106.     Upon information and belief, Defendants have misappropriated NWMP's trade secrets.

107.     Upon information and belief, Defendants' misappropriation was willful and malicious.

108.     Upon information and belief, Defendants' misappropriation of NWMP's trade secrets is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

109.     The threatened and actual injuries that NWMP has suffered and will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to NWMP's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets, monetary damages alone will not adequately compensate NWMP for the Individuals Defendants' wrongful use of such information and breach of their duties to

NWMP.  NWMP, therefore, lacks an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

110.     Under Section 1836 of the Defend Trade Secrets Act, NWMP is entitled to injunctive relief, compensatory damages, exemplary damages, an award of reasonable attorneys' fees, and/or other appropriate relief.

**COUNT II**
**Breach of Contract**
*NWMP v. Individual Defendants*

111.     NWMP incorporates by reference Paragraphs 1 through 110 of the Verified Complaint as if fully set forth herein.

112.     Under the terms of their respective Agent's Contracts and Associate Agent's Contracts, Individual Defendants each agreed and were obligated to keep secret and not disclose or use NWMP's Confidential Information and Trade Secrets.  *See* Exhibits 1-6.

113.     Under the terms of their respective Agent's Contracts and Associate Agent's Contracts, Individual Defendants agreed to return NWMP's Confidential Information, "whether in written or electronic form," that the Agents and/or Associate Agents acquired or were provided by NWMP.  *See* Exhibits 1-6.

114.     Under the terms of their respective NMIS Contracts, Pfanstiel, Gray and Pochiba were contractually obligated them, upon termination, to return any Confidential Information and Trade Secrets in their possession, including all information materials regarding NWMP clients, other than the client's name, address, phone number, and email address.

115.     Under the terms of their respective Non-Solicitation Addendum and Associate Agent's Contracts, Individual Defendants each agreed for a period of one year following the termination of their contracts not to "directly or indirectly, induce or attempt to induce or assist

any Client of the [NWMP]" as to whom they received compensation or provided services to

"withdraw, curtail, reduce, cancel, surrender or terminate any insurance, annuities, securities

products or any other existing business or commercial relationship with [NWMP] or any of its

subsidiaries or affiliates." *See* Exhibits 1-6.

116.    Further, under the terms of their respective Non-Solicitation Addendum, the

Individual Defendants each agreed for a period of one year following the termination of their

contracts to refrain from soliciting or recruiting any agents, or registered representatives of

NWMP and inducing them to terminate their contracts with NWMP.  *See* Exhibits 1-6.

117.    Individual Defendants each  agreed to the terms of their respective Agent's

Contracts, Associate Agent Contracts, and Non-Solicitation Addendum, including the restriction

on solicitation, return of company property and use and/or disclosure of NWMP's Confidential

Information and Trade Secrets, as demonstrated by their signatures on their respective

agreements. *See* Exhibits 1-6.

118.    The terms of the post-termination covenants are reasonable in their scope, and

the provisions are necessary to protect the NWMP's legitimate business interests.

119.    Individual Defendants have breached and continue to be in breach of their

respective Agent's Contracts and Associate Agent's Contracts by (i) retaining NWMP's

Confidential Information and Trade Secrets post-termination of their contracts, (ii) soliciting –

during the restricted period – NWMP's clients and inducing them to "withdraw, curtail, reduce,

cancel, surrender or terminate any insurance, annuities, securities products or any other existing

business or commercial relationship with [NWMP]", and/or (iii) soliciting and/or recruiting –

during the restricted period – agents, directors, and registered representatives of NWMP and

inducing them to terminate their contracts with NWMP.

120.    As a proximate result of Individual Defendants' actions, NWMP has suffered and will continue to suffer harm which cannot be adequately compensated by monetary damages alone.

121.    Individual Defendants have violated and continue to violate their post-termination obligations to NWMP with full knowledge of those obligations under their respective Agent's Contracts, Associate Agent Contracts, NMIS Contracts and at law.

122.    Individual Defendants' breach of their contractual obligations to NWMP is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

### COUNT III
### Tortious Interference With Contractual Relations With NWMP Agents
*NWMP v. Individual Defendants*

123.    NWMP incorporates by reference Paragraphs 1 through 122 of the Verified Complaint as if fully set forth herein.

124.    Each of the Individual Defendants executed valid and enforceable agreements with NWMP, including their respective Agent's Contracts, Associate Agent Contracts, and Non-Solicitation Addenda.

125.    By agreeing to abide by the post-termination obligations outlined in their respective Agent's Contracts and Associate Agent Contracts, the Individual Defendants each had knowledge of the post-termination obligations NWMP's agents and associate agents owed to NWMP regarding confidentiality and non-solicitation.

126.    Notwithstanding this knowledge, the Individual Defendants knowingly, intentionally, unjustifiably and in bad faith induced the other Individual Defendants to breach

their respective contracts with NWMP by (a) soliciting and/or recruiting – during the restricted period – agents, and registered representatives of NWMP and inducing them to terminate their contracts with NWMP; and/or (b) requesting, encouraging, or otherwise inducing other Individual Defendants to disclose or use NWMP's Confidential Information and Trade Secrets or other material of commercial value.

127.    As described in detail herein, the Individual Defendants have interfered with the contractual obligations each owes to NWMP.

128.    The Individual Defendants' interference with the contractual obligations the other Individual Defendants owe to NWMP is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

129.    By reason of the foregoing, NWMP is entitled to recover compensatory and punitive damages against Individual Defendants.

### COUNT IV
### Tortious Interference With Contractual Relations With NWMP Agents
*NWMP v. XXI Century*

130.    NWMP incorporates by reference Paragraphs 1 through 129 of the Verified Complaint as if fully set forth herein.

131.    Each Individual Defendant executed valid and enforceable contracts with NWMP, including their respective Agent's Contract, Associate Agent's Contract, Non-Solicitation Addendum and/or NMIS Contract.

132.    At the time it contracted with or engaged Individual Defendants, XXI Century knew of Individual Defendants' contractual obligations to NWMP.

133.    XXI Century knowingly, intentionally, unjustifiably and in bad faith induced Individual Defendants to breach their respective agreements with NWMP (a) by soliciting and recruiting the Individual Defendants and inducing them to terminate their contracts with NWMP; and/or (b) by requesting, encouraging, or otherwise inducing other Individual Defendants to disclose or use NWMP's Confidential Information and Trade Secrets or other material of commercial value.

134.    As described in detail herein, XXI Century has interfered with Individual Defendants' contractual obligations to NWMP.

135.    XXI Century's interference with Individual Defendants' contractual obligations to NWMP is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

136.    By reason of the foregoing, NWMP is entitled to recover compensatory and punitive damages against XXI Century.

**COUNT V**
**Tortious Interference With Contractual Relations With NWMP Clients**
*NWMP v. XXI Century*

137.    NWMP incorporates by reference Paragraphs 1 through 136 of the Verified Complaint as if fully set forth herein.

138.    Each Individual Defendant executed valid and enforceable agreements with NWMP, NM and NM's affiliates, including their respective Agent's Contract, Associate Agent's Contract, Non-Solicitation Addendum and/or NMIS Contract.

139.    At the time it contracted with or engaged Individual Defendants, XXI Century knew of Individual Defendants' contractual obligations to NWMP.

140.     XXI Century knowingly, intentionally, unjustifiably and in bad faith induced Individual Defendants to breach their respective agreement with NWMP by requesting, encouraging, or otherwise inducing Individual Defendants to induce their NWMP clients to "withdraw, curtail, reduce, cancel, surrender or terminate any insurance, annuities, securities products or any other existing business or commercial relationship with [NWMP]."

141.     As described in detail herein, XXI Century has interfered with Individual Defendants' contractual obligations to NWMP.

142.     XXI Century's interference with Individual Defendants' contractual obligations to NWMP is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

143.     By reason of the foregoing, NWMP is entitled to recover compensatory and punitive damages against XXI Century.

**COUNT VI**
**Conversion**
*NWMP v. All Defendants*

144.     NWMP incorporates by reference Paragraphs 1 through 143 of the Verified Complaint as if fully set forth herein.

145.     As described above, Defendants' actions in illegally acquiring and converting NWMP's client files constitutes an illegal conversion of assets.

146.     Additionally, to the extent any of the Confidential Information and Trade Secrets misappropriated by Defendants as described above do not rise to the level of a "trade secret" under the Defend Trade Secrets Act or the state counterparts, Defendants' actions in illegally acquiring and converting NWMP's Confidential Information and Trade Secrets constitute an illegal conversion of assets.

147.    Defendants' conversion of NWMP's property is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

**COUNT VII**
**Breach of Fiduciary Duty/Duty of Loyalty**
*NWMP v. Individual Defendants*

148.    NWMP incorporates by reference Paragraphs 1 through 147 of the Verified Complaint as if fully set forth herein.

149.    While the Individual Defendants were working for NWMP, they had common law fiduciary duties to act in good faith and solely for the benefit of NWMP in all matters for which they were contracted and being paid.

150.    The Individual Defendants occupied a position of trust and confidence while contracted by NWMP.

151.    As such, the Individual Defendants owed NWMP fiduciary duties and a duty of loyalty.

152.    Upon information and belief, while under contract with NWMP, the Individual Defendants breached their duties by acting on behalf of themselves, each other, and XXI Century to the detriment of NWMP.

153.    Upon information and belief, the Individual Defendants delayed and/or diverted business opportunities they received while under contract with NWMP so that they could capitalize on NWMP's business opportunities on behalf of XXI Century.

154.    The Individual Defendants' breach of their fiduciary duties and/or duties of loyalty was a real factor in bringing about injury to NWMP, including but not limited to lost profits, lost revenue, lost opportunities, loss of goodwill and compensatory damages.

155.    The aforementioned conduct of the Individual Defendants, which actually harmed NWMP, is of an outrageous and/or egregious nature.

156.    The threatened and actual injuries that NWMP has suffered and will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to NWMP's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets, the Individual Defendants' wrongful use of such information, monetary damages alone will not adequately compensate NWMP for the Individual Defendants' breach of their fiduciary and/or duties of loyalty.  NWMP, therefore, lacks an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

157.    Individual Defendants' breach of their fiduciary duties and/or duties of loyalty to NWMP property is causing and will continue to cause NWMP to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NWMP in an amount to be determined at trial, but in any event, in excess of $75,000.

## COUNT VIII
## Civil Conspiracy
### *NWMP v. All Defendants*

158.     NWMP incorporates by reference Paragraphs 1 through 157 of the Verified Complaint as if fully set forth herein.

159.    By engaging in the acts set forth above, Defendants conspired to knowingly, willfully and purposefully commit illegal acts designed to unfairly compete with NWMP, steal NWMP's Confidential Information and Trade Secrets, steal other NWMP's client files, including its computers, and otherwise misappropriate NWMP's Confidential Information and Trade Secrets.

160.    Upon information and belief, Defendants agreed, combined and acted with a common plan to breach the contractual and common law duties owed to NWMP by engaging in the unlawful acts described above.

161.    Defendants further conspired to do so with the specific intent to injure NWMP's business.

162.    Defendants' actions have been willful and outrageous and undertaken with reckless indifference to NWMP's rights.

163.    As a direct and proximate result of the acts done in furtherance of the conspiracy, NWMP has been damaged, including damage in the form of expenses related to investigative and remedial actions taken to address the effects of the conspiracy.  NWMP has suffered, and will continue to suffer, these injuries.

164.    The threatened and actual injuries that NWMP has suffered and will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to NWMP's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets, monetary damages alone will not adequately compensate NWMP for Defendants' wrongful use of such information and their breach of their duties to NWMP. NWMP, therefore, lacks an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

**COUNT IX**
**Unfair Competition**
*NWMP v. All Defendants*

165.    NWMP incorporates by reference Paragraphs 1 through 164 of the Verified

Complaint as if fully set forth herein.

166.    The aforementioned actions described herein and in Counts I-VIII constitute

unfair trade practices and unfair methods of competition.

167.    Defendants' conduct has been and continues to be willful, intentional and

unprivileged, and has caused and will continue to cause NWMP to suffer immediate, irreparable

harm.

168.    The threatened and actual injuries that NWMP has suffered and will suffer are

immediate and irreparable.  Because of the difficulty in quantifying injury and harm to NWMP's

ability to compete, acquire and maintain a competitive advantage through its Confidential

Information and Trade Secrets, monetary damages alone will not adequately compensate NWMP

for the Defendants' wrongful use of such information and misconduct.  NWMP, therefore, lacks

an adequate and complete remedy at law and an equitable remedy is appropriate in addition to

monetary damages.

169.    Defendants' conduct, as described above, is contrary to honest, industrial and

commercial practices.

**PRAYER FOR RELIEF**

WHEREFORE, NWMP respectfully requests that this Court:

(a)    Award immediate injunctive relief to NWMP in the form of an immediate

injunction to preclude the Individual Defendants from competing with NWMP while in

possession of NWMP's Confidential Information and Trade Secrets;

(b)     Award immediate and then permanent injunctive relief to NWMP in the form of an immediate injunction ordering Defendants to return all NWMP Confidential Information and Trade Secrets in their possession, including policyholder, annuitant, and customer data and files;

(c)     Award immediate and then permanent injunctive relief to NWMP in the form of enforcement of the restriction on solicitation of  customers' replacement insurance policies, annuities issued by and investment accounts held with NM and its affiliates;

(d)     Award immediate and then permanent injunctive relief to NWMP in the form of enforcement of the restrictions on possession, use and disclosure of NWMP's Confidential Information and Trade Secrets to which the Individual Defendants agreed during their engagement or employment with NWMP;

(e)     Award actual and compensatory damages to NWMP as shall be determined at trial for injuries and damages which NWMP has sustained as a consequence of Defendants' wrongful conduct;

(f)     Award punitive damages for Defendants' willful, wanton and malicious conduct;

(g)     Award costs, expenses and legal fees incurred by NWMP in bringing this lawsuit to enforce its contractual rights; and

(h)     Award such other relief as the Court deems to be just and proper.


**<u>JURY TRIAL DEMANDED</u>**

Dated:  April 29, 2019                    Respectfully submitted,

                                          */s/ Erin J. McLaughlin*
                                          Paul S. Mazeski *(PA 55688)*
                                          paul.mazeski@bipc.com
                                          Erin J. McLaughlin *(PA 202044)*
                                          erin.mclaughlin@bipc.com
                                          Gretchen Woodruff Root (*PA 309683*)
                                          gretchen.root@bipc.com
                                          Curtis M. Schaffner (*PA 311274*)
                                          curtis.schaffner@bipc.com
                                          BUCHANAN INGERSOLL & ROONEY PC
                                          One Oxford Centre, 20th Floor
                                          301 Grant Street
                                          Pittsburgh, PA  15219
                                          Phone:  412-562-8800
                                          Fax:  412-562-1041

                                          *Attorneys for Plaintiffs*